IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **ZERMATT HOLDINGS, LLC,** | Case No. **3:23-cv-01423-JJH** |
| and | |
| | Judge Jeffrey J. Helmick |
| **WFA of SAN DIEGO, LLC,** | |
| Plaintiffs, | |
| v. | **SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **MARTIN CHRISTOPHER ("CHRIS") COOPER,** an individual | |
| and | |
| **CHRIS COOPER & COMPANY, INC.,** an Ohio Corporation, | |
| Defendants. | |

Now comes Plaintiffs Zermatt Holdings, LLC ("Zermatt") and WFA of San Diego, LLC ("WFASD") (Zermatt and WFASD are jointly referred to as "Plaintiffs"), and for their second amended complaint against Defendants Martin Christopher "Chris" Cooper ("Cooper") and Chris Cooper & Company, Inc. ("CCCI") (Cooper and CCCI are jointly referred to as "Defendants") hereby state as follows:

## SUMMARY AND NATURE OF ACTION

1. This is a claim for breach of contract, intentional interference with a business relationship, deceptive trade practices under Ohio Revised Code §§ 4165.02(A)(10) and 4165.03, alternatively, unjust enrichment, quantum meruit, promissory estoppel and unfair competition. Zermatt is a private holding company with a portfolio of interests including but not limited to an active presence in financial services and wealth & asset management. WFASD is a subsidiary of

1

Zermatt and is an SEC registered investment advisor, registered in several states including, but not limited to, California, North Carolina, and Ohio.

2. On January 1, 2020, Zermatt, by and through WFASD, purchased substantially all of the assets of an SEC registered investment advisor, Wheeler, Frost Associates, Inc., a California corporation ("WFA"), including but not limited to substantially all of the book of business to whom WFA provided investment advisory services.

3. The book of clients acquired by Plaintiffs from WFA included several clients that had previously been referred by CCCI to WFA for a referral fee.

4. Cooper, individually and by and through CCCI, provides various services including but not limited to elder care, tax preparation and representation and retirement planning.

5. At all times applicable, neither Cooper nor CCCI were a competitor of WFASD as neither Cooper nor CCCI are registered with the SEC, nor any state, as an investment advisor, or an investment advisor representative. [1]

6. On or about February 6, 2020, WFA, Cooper and CCCI entered into a Termination of Solicitor Agreement (the "Termination Agreement") pursuant to which Cooper and CCCI were paid $369,326.00 and agreed to take every reasonable effort to support and protect the client/ advisor relationships which WFASD has with the clients acquired from WFA.

7. After March 21, 2023, Cooper and CCCI have breached their obligations to WFASD and have intentionally used various improper means, including, but not limited to, false misrepresentations of fact, to cause known clients of Zermatt and WFASD to terminate their business relationship with Zermatt and WFASD.

---

[1] From approximately August 9, 1999 through December 31, 2013, CCCI was registered as an investment advisor with the SEC and Cooper was registered as an investment advisor representative.

8. As a direct and proximate result of Cooper and CCCI's post-March 21, 2023, breach of the Termination Agreement, deceptive trade practices and intentional interference with Plaintiff's business relationships, Plaintiffs have lost several business relationships and suffered past and future damages in excess of $1,092,000.

9. Alternatively, as a result of Plaintiffs reliance upon the promise by Cooper and CCCI to take every reasonable effort to support and protect the client/ advisor relationships which WFASD has with the clients acquired from WFA, and Cooper's and CCCI's breach of that promise, Plaintiffs have suffered past and future damages in excess of $1,092,000.

10. Alternatively, pursuant to the equitable principles of unjust enrichment and quantum meruit, it is inequitable and unjust for CCCI to maintain the benefit of $369,326.00 while engaging in conduct damaging Plaintiffs' business relationships.

11. To the extent that either Cooper or CCCI would be found to be a competitor of WFASD, which they are not, Defendants used improper means to intentionally interfere with WFASD; and Defendants actions also constitute unfair competition under Ohio common law.

## PARTIES, JURISDICTION, AND VENUE

12. Zermatt is a North Carolina limited liability company having an office and principal place of business located at 2115 Rexford Road, Suite 311, Charlotte, NC 28222. At all times referenced herein, Zermatt had four members, with two members residing in North Carolina, one member residing in Alabama, and one member residing in Florida.

13. WFASD is a North Carolina limited liability company having an office and principal place of business located at 3170 Fourth Avenue, Third Floor, San Diego, CA 92103. Zermatt is WFASD's sole member.

14. Cooper is an individual residing at 5646 Baronswood Circle, Toledo, Ohio 43615-7351.

15. CCCI is an Ohio corporation, with its principal place of business located at 5555 Airport Highway, Suite 115, Toledo, OH 43615

16. This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse (Zermatt is a citizen of North Carolina, Alabama, or Florida; WFASD is a citizen of North Carolina; Cooper and CCCI are both citizens of Ohio) and the amount in controversy exceeds $75,000.

17. This Court has personal jurisdiction over each of the Defendants as set forth in Ohio Rev. Code § 2307.382(A), because they either: transacted business in Ohio, contracted for services to be performed in Ohio and did in fact regularly transact business in Ohio; caused tortious injury to Plaintiffs in this state by an act or omission or omission in this state; caused tortious injury to Plaintiffs in this state by an act or omission outside this state and regularly does business in this state and derives substantial revenue from services rendered in this state; and/ or caused tortious injury to Plaintiffs in this state by an act outside this state committed with the purpose of injuring others along with the reasonable expectation that Plaintiffs would be injured in this state.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 1391(c)(2), because a substantial part of the events and omissions giving rise to the claims occurred in this judicial district and the defendants may be sued in any judicial district in which they are subject to personal jurisdiction.

**BACKGROUND ALLEGATIONS**

19. Plaintiffs' purchase of the assets of WFA on January 1, 2020, included, but was not limited to: i) the payment by Plaintiffs of substantial sums split among the various shareholders of

4

WFA, including the majority shareholder of WFA, Peter R. Wheeler ("Wheeler"); and ii) execution of an employment agreement with WFASD by each of the WFA shareholders and several WFA employees, which agreements included various non-competition covenants and non-disclosure covenants.

20. Several years prior to Plaintiffs' purchase of the assets of WFA, WFA had entered into a solicitor agreement with CCCI, whereby WFA paid CCCI 50% of the fees collected from clients referred by CCCI.

21. As part of WFA and CCCI's compliance with the Investment Advisors Act of 1940 and 17 CFR 275.206(4)-1, the prior solicitor agreement was set forth in writing.

22. As of January 1, 2020, as part of the purchase of WFA's assets, any and all clients of WFA which had been referred by CCCI, the vast majority of which are located in Ohio, were transferred to Plaintiffs (the "CCCI Referrals").

23. In satisfaction of any interest that Defendants may have had to any future revenue generated by the CCCI Referrals, and to preserve Plaintiffs' unfettered right to the acquired CCCI Referrals, on or about January 1, 2020, $369,326.00 of the purchase price paid by Plaintiffs was paid to CCCI.

24. On or about February 6, 2020, WFA, Cooper and CCCI entered into a Termination of Solicitor Agreement (the "Termination Agreement") pursuant to which: (i) the solicitor relationship between WFA and Cooper and CCCI was terminated; (ii) Cooper and CCCI were paid $369,326.00; (iii) Cooper and CCCI agreed that they had been compensated in full for any future income from the WFA clients transferred to WFASD; (iv) Cooper and CCCI "will take every reasonable effort to support and protect the client/ advisor relationships" acquired by "WFA's successor, WFASD."

5

25. Pursuant to the terms of the Termination Agreement, the parties to the Termination Agreement intended that WFASD have a right to performance of Cooper's and CCCI's obligation of support and protection, otherwise "any effort [on Cooper or CCCI's] part to interfere with [WFASD's client relationships] would result in financial harm to WFA."

26. On or about January 1, 2023, Cooper individually and on behalf of CCCI sent letters to the CCCI Referrals (the "January 1, 2023 Letters") with the intention that the CCCI referrals terminate their business relationship with Plaintiffs and transfer their business to Peter R. Wheeler.

27. The January 1, 2023 Letters made various misleading, disparaging and false statements regarding the services provided by Plaintiffs and the future of Plaintiff's business, including but not limited to that: i) Plaintiffs' "future vision of the business" threatens the "smooth transition" of the business and the protection of the "services" that WFA "had successfully provided for many years"; and ii) the issues with services provided by WFASD necessitated that Cooper was in the process of "moving my accounts to Pete", which had not occurred.

28. Since neither Cooper nor CCCI is a competitor of Plaintiffs, the January 1, 2023 Letters were sent by Cooper and CCCI, solely because Cooper is a "former business contact and long-time friend of Mr. Wheeler".

29. As a direct and proximate result of the January 1, 2023 Letters, throughout January 2023 and early February 2023, several of the CCCI referrals in Ohio transferred their accounts from WFASD to Wheeler.

30. On February 7, 2023, counsel for Plaintiffs sent a cease-and-desist letter to Cooper and CCCI, including a notice to preserve all evidence.

31. On March 21, 2023, Plaintiffs entered into a settlement agreement with Wheeler wherein they agreed to release claims against Wheeler and Cooper, as a result of those acts or

omissions by them which occurred on or before March 21, 2023 (but not acts or omissions occurring after March 21, 2023).

32. In August, 2023, Plaintiff and Wheeler agreed that the March 21, 2023 settlement agreement would also include CCCI to the extent of those acts or omissions which occurred on or before March 21, 2023 (but not acts or omissions occurring after March 21, 2023).

33. Subsequent to March 21, 2023, and in breach of the Termination Agreement, Cooper and CCCI failed to take every reasonable effort to support and protect the client/ advisor relationships which WFASD has with the clients acquired from WFA, and engaged in further contact with various CCCI Referrals (the majority of which are located in Ohio) to have the CCCI Referrals terminate their business relationship with Plaintiffs.

34. As a direct and proximate result of Cooper's and CCCI's new actions after March 21, 2023, several of the CCCI Referrals have terminated their business relationship with Plaintiffs after March 21, 2023.

35. As a direct and proximate result of Cooper's and CCCI's new actions after March 21, 2023, Plaintiffs have lost several business relationships and suffered past and future damages in excess of $1,092,000.

36. To the extent that Cooper or CCCI have received compensation for the solicitations on behalf of Wheeler, Defendants' actions constitute improper conduct in violation of Investment Advisors Act of 1940 and 17 CFR 275.206(4)-1.

## COUNT ONE-BREACH OF CONTRACT

37. Plaintiffs restate each allegation set forth above as if fully set forth herein.

38. Plaintiff WAFSD is an intended third-party beneficiary of the Termination Agreement, specifically as to Cooper's and CCCI's obligation to take every reasonable effort to

support and protect the client/ advisor relationship that WFASD has with each of the clients that WFASD acquired from WFA.

39. Subsequent to March 21, 2023, Cooper and CCCI engaged in actions with the client's that WFASD acquired from WFA, which actions breached Cooper and CCCI's obligation to support and protect the client/ advisor relationship that WFASD has with each of the clients that WFASD acquired from WFA.

40. Subsequent to March 21, 2023, Cooper and CCCI failed to take every reasonable effort to support and protect the client/ advisor relationship that WFASD has with each of the clients that WFASD acquired from WFA, including but not limited to doing nothing to support and protect the client/ advisor relationship, which failure to act breached Cooper's and CCCI's obligation to support and protect the client/ advisor relationship that WFASD has with each of the clients that WFASD acquired from WFA.

41. As a direct and proximate result of Cooper and CCCI's breach of the Termination Agreement, WFASD has suffered past and future damages in excess of $1,092,000.

## COUNT TWO-INTENTIONAL INTERFERENCE WITH A BUSINESS RELATIONSHIP

42. Plaintiffs restate each allegation set forth above as if fully set forth herein.

43. Since on or about January 1, 2020, Plaintiffs had a business relationship with the CCCI Referrals

44. Defendants knew that Plaintiffs had a business relationship with the CCCI Referrals.

45. After March 21, 2023, Defendants, without privilege to do so and using improper means, intentionally interfered with Plaintiffs' business relationship with the CCCI Referrals causing several of the CCCI Referrals to terminate their business relationship with Plaintiffs.

8

46. As a direct and proximate result of Defendants' intentional interference with Plaintiffs' business relationships after March 21, 2023, Plaintiffs have suffered past and future damages in excess of $1,092,000.

## COUNT THREE – DECEPTIVE TRADE PRACTICE UNDER OHIO REVISED CODE §§4165.02(A)(10) and 4165.03

47. Plaintiffs restate each allegation set forth above as if fully set forth herein.

48. Pursuant to Ohio Revised Code §4165.02, Defendants engaged in a deceptive trade practice when, in the course of Defendants' business, Defendants, as set forth above, disparaged the services and or business of Plaintiffs by false representation of fact.

49. Pursuant to Ohio Revised Code §4165.02(B), Plaintiffs need not prove competition between Plaintiffs and Defendants.

50. Defendants restated or otherwise renewed the effect of Defendants' deceptive trade practices during contact with the CCCI Referrals after March 21, 2023.

51. As a direct and proximate result of Defendants' post-March 21, 2023 restatement or renewal of the deceptive trade practices, Plaintiffs have lost several business relationships and suffered past and future damages in excess of $1,092,000.

52. Plaintiffs are likely to be damaged further by Defendants' continued deceptive trade practices.

53. Pursuant to Ohio Revised Code §4165.03(A), Plaintiffs are entitled to the recovery of compensatory damages and an award of injunctive relief if Plaintiffs are likely to be damaged further.

54. The Defendants willfully engaged in, restated, or otherwise renewed Defendants' deceptive trade practice, knowing it to be deceptive.

9

55. Pursuant to Ohio Revised Code §4165.03(B), Plaintiffs are entitled to an award of attorney's fees as a result of Defendants willfully engaging, restating, or otherwise renewing a deceptive trade practice knowing it to be deceptive.

56. Pursuant to Ohio Revised Code §4165.03(C), Plaintiffs are entitled to the relief provided by Ohio Revised Code §4165.03, in addition to civil remedies otherwise available against the same conduct under the common law or other sections of the Revised Code.

### COUNT FOUR – UNJUST ENRICHMENT
### (in the alternative)

57. As a further and separate cause of action, Plaintiffs state in the alternative to the Breach of Contract Claim as follows.

58. Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

59. Defendants were conferred the benefit of the payment of $369,326.00 of the purchase price paid by Plaintiffs, in satisfaction of any interest that Cooper and CCCI may have had to any future revenue generated by the CCCI Referrals and to support and protect Plaintiffs' relationship with the clients acquired by Plaintiffs from WFA.

60. Defendants had knowledge of and received the benefit of the payment of $369,326.00 as set forth above.

61. Despite Defendants' awareness of receiving such benefit, Defendants have proceeded to intentionally engage in new conduct after March 21, 2023, which did not support and protect Plaintiffs' relationship with the CCCI Referrals causing past and future damages to Plaintiffs in excess of $1,092,000.

62. Despite Defendants awareness of receipt of the benefit of the $369,326.00 portion of the purchase price paid by Plaintiffs, subsequent to March 21, 2023, Cooper and CCCI failed to

take every reasonable effort to support and protect the client/ advisor relationship that WFASD has with each of the clients that WFASD acquired from WFA, including but not limited to doing nothing to support and protect the client/ advisor relationship, causing past and future damages to Plaintiffs in excess of $1,092,000.

63. Defendants' retention of the benefit of the payment of $369,326.00 as set forth above, while proceeding to intentionally engage in new conduct after March 21, 2023, which did not support and protect Plaintiffs' relationship with the CCCI Referrals, or otherwise failing to engage in conduct which would support and protect Plaintiffs' relationship with the CCCI Referrals, would be inequitable and unjust.

## COUNT FIVE – QUANTUM MERUIT
### (in the alternative)

64. As a further and separate cause of action, Plaintiffs state in the alternative to the Breach of Contract Claim as follows.

65. Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

66. A $369,326.00 portion of the purchase price paid by Plaintiffs was conferred as a benefit to Defendants to satisfy any interest that CCCI and Cooper may have had to any future revenue generated by the CCCI Referrals and to support and protect Plaintiffs' relationship with all clients acquired from WFA.

67. Such benefit was conveyed to Defendants in reliance upon the representation and promises by Defendants that Plaintiffs had acquired the right to the CCCI Referrals.

68. Defendants had knowledge of and received the benefit of the $369,326.00 portion of the purchase price paid by Plaintiffs.

69. Despite Defendants' awareness of receipt of the benefit of the $369,326.00 portion of the purchase price paid by Plaintiffs, Defendants have proceeded to intentionally engage in new conduct after March 21, 2023, which failed to support and protect Plaintiffs' relationship with the CCCI Referrals.

70. Despite Defendants' awareness of receipt of the benefit of the $369,326.00 portion of the purchase price paid by Plaintiffs, subsequent to March 21, 2023, Cooper and CCCI failed to take every reasonable effort to support and protect the client/ advisor relationship that WFASD has with each of the clients that WFASD acquired from WFA, including but not limited to doing nothing to support and protect the client/ advisor relationship.

71. Defendants' retention of the benefit of the payment of $369,326.00, while not honoring the obligation to take every reasonable effort to support and protect the client/ advisor relationship that WFASD has with each of the clients that WFASD acquired from WFA, would be inequitable and unjust.

## COUNT SIX – PROMISSORY ESTOPPEL
## (in the alternative)

72. As a further and separate cause of action, Plaintiffs state in the alternative to the Breach of Contract Claim as follows.

73. Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

74. A clear and unambiguous promise was made by Cooper and CCCI that they "will take every reasonable effort to support and protect the client/ advisor relationships" acquired by "WFA's successor, WFASD".

75. It is both reasonable and foreseeable that Plaintiffs would rely upon the promise that Cooper and CCCI would support and protect WAFSD's relationship with the clients acquired from WFA.

76. Plaintiffs: i) were aware that the $369,326.00 had been paid to Cooper and CCCI; ii) that the payment was to being made to Cooper and CCCI in consideration for the promise to "take every reasonable effort to support and protect the client/ advisor relationships" acquired by "WFA's successor, WFASD"; and iii) Plaintiffs purchased the clients of WFA in reliance upon the promise that Cooper and CCCI would take every reasonable effort to support and protect the acquired client/ advisor relationships.

77. As a result of Plaintiffs' reliance upon the promise by Cooper and CCCI, and Cooper's and CCCI's breach of that promise, Plaintiffs have suffered past and future damages in excess of $1,092,000.

## **COUNT SEVEN – UNFAIR COMPETITION**

78. Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

79. As set forth above, Defendants engaged in the circulation of false rumors to harm the business of Plaintiffs after March 21, 2023.

80. As set forth above, Defendants engaged in the publication of false or misleading statements after March 21, 2023 to harm the business of Plaintiffs.

81. As a direct and proximate result of Defendants' post-March 21, 2023 restatement or renewal of the false rumors and published statements, Plaintiffs have lost several business relationships and suffered past and future damages in excess of $1,092,000.

82. To the extent Defendants are deemed to be a competitor of Plaintiffs, Defendants' actions constitute unfair competition pursuant to Ohio common law.

WHEREFORE, Plaintiffs Zermatt Holdings, LLC and WFA of San Diego, LLC pray for judgment against Defendants Martin Christopher "Chris" Cooper and Chris Cooper & Company, Inc. in the following manner:

a. As to Count One, an award of compensatory damages in favor of Plaintiffs in an amount to be determined at trial, but in excess of $1,092,000;

b. As to Count Two, an award of compensatory damages in favor of Plaintiffs in an amount to be determined at trial, but in excess of $1,092,000;

c. As to Count Three: 1) an award of compensatory damages in favor of Plaintiffs in an amount to be determined at trial, but in excess of $1,092,000; 2) preliminary and permanent injunctive relief barring Defendants from, directly or indirectly, in any manner, using any means, soliciting, encouraging or otherwise inducing any of the CCCI Referrals to terminate or alter the CCCI Referrals business relationship with Plaintiffs and 3) an award of attorneys' fees in favor of Plaintiffs pursuant to Ohio Revised Code §4165.03(B);

d. As to Count Four, a judgment in favor of Plaintiffs awarding monetary damages in an amount to be determined, but in excess of $369,326.00;

e. As to Count Five, a judgment in favor of Plaintiffs awarding monetary damages in an amount to be determined, but in excess of $369,326.00;

f. As to Count Six: an award of compensatory damages in favor of Plaintiffs in an amount to be determined at trial, but in excess of $1,092,000;

14

g. As to Count Seven: an award of compensatory damages in favor of Plaintiffs in an amount to be determined at trial, but in excess of $1,092,000;

h. On all Claims, pre- and post-judgment interest, costs, attorneys' fees, and all other relief at law or in equity which the Court deems proper and just.

Respectfully submitted,

/s/ Peter A. Saba
Peter A. Saba (0055535)
Jeffrey M. Nye (0082247)
Joshua M. Smith (0092360)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
**Attorneys for Plaintiff**

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a jury on all issues triable to a jury.

Respectfully submitted,

/s/ Peter A. Saba
Peter A. Saba (0055535)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 8, 2023, the undersigned filed the foregoing using the Court's CM/ECF system, which will send notice of such filing to all parties of record.

/s/ Peter A. Saba
Peter A. Saba (0055535)

15