UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ZERMATT HOLDINGS, LLC, ET AL., | CASE NO. 3:23-cv-01423-JJH |
| Plaintiffs, | JUDGE JEFFREY J. HELMICK |
| v. | DEFENDANTS' MOTION TO STAY PENDING ARBITRATION |
| COOPER, ET AL., | |
| Defendants. | |

Defendants Martin Christopher ("Chris") Cooper and Chris Cooper & Company, Inc. (collectively, Defendants) move for an order staying this action pending arbitration, pursuant to 9 U.S.C. § 3, and/or the Court's inherent powers.[1]

As more fully explained in the attached memorandum in support and declaration, which are incorporated by reference, Plaintiffs Zermatt Holdings, LLC and WFA of San Diego, LLC (collectively, "Plaintiffs") are bound by a settlement agreement. Defendants are undisputed intended third-party beneficiaries of this settlement agreement, which contains both a release and an arbitration provision, such that this Court should stay this case pending arbitration in accordance with 9 U.S.C. § 3. There is no dispute that the parties to the present action are subject to mandatory arbitration, as per a valid and binding arbitration clause.

If the action is not stayed pursuant to 9 U.S.C. § 3, it should be stayed pursuant to the Court's inherent power to regulate its own docket, pending the outcome of an ongoing arbitration concerning Plaintiffs and related issues.

---

[1] Alternatively, Defendants request that their deadline to respond to the Second Amended Complaint be extended until two weeks after this motion is decided.

Dated: November 22, 2023

        Respectfully submitted,

        */s/ Philip R. Bautista*
        Philip R. Bautista (0073272)
        pbautista@taftlaw.com
        Daniel H. Bryan (0095309)
        dbryan@taftlaw.com
        TAFT STETTINIUS & HOLLISTER LLP
        200 Public Square, Suite 3500
        Cleveland, Ohio 44114-2302
        Telephone: (216) 241-2838
        Facsimile: (216) 241-3707

        *Attorneys for Defendants Martin Christopher Cooper and Chris Cooper & Company, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ZERMATT HOLDINGS, LLC, ET AL., | ) ) ) | CASE NO. 3:23-cv-01423-JJH |
| Plaintiffs, | ) ) | JUDGE JEFFREY J. HELMICK |
| v. | ) ) ) | MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY PENDING ARBITRATION |
| COOPER, ET AL., | ) ) | |
| Defendants. | ) ) | |

## I. INTRODUCTION

Plaintiffs Zermatt Holdings, LLC ("Zermatt") and WFA of San Diego, LLC ("WFASD") (collectively "Plaintiffs") refuse to comply with their agreements to arbitrate claims that relate to Defendant Martin Christopher Cooper ("Cooper") and Chris Cooper & Company, Inc. ("CCCI") (CCCI and Cooper collectively, "Defendants"). Because a valid arbitration agreement covers Plaintiffs' claims, the Federal Arbitration Act (FAA) "leaves no place for the exercise of discretion," and instead "mandates that…the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). FAA § 3 further requires that the Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Accordingly, the parties are required to resolve their dispute through arbitration and this action should be stayed pending that arbitration. *See* 9 U.S.C. § 3.

Plaintiffs have already filed three complaints in this matter, to date. The operative complaint is the Second Amended Complaint ("SAC"), which asserts seven counts: (1) Breach of

1

Contract; (2) Intentional Interference with a Business Relationship; (3) Deceptive Trade Practice; (4) Unjust Enrichment; (5) Quantum Meruit; (6) Promissory Estoppel; and (7) Unfair Competition (the "SAC Claims"). The SAC alleges that Defendants wrongfully sent letters on January 1, 2023, which began an exodus of clients leaving Plaintiffs' wealth management services and going elsewhere. *See* SAC ¶¶ 26-29. Plaintiffs settled these and any and all claims regarding Defendants' actions on March 21, 2023, and in the settlement agreement, Defendants agreed to a broad release of liability and also *to arbitrate* in San Diego, California any disputes arising out of or in any way connected to this settlement and conduct. Nonetheless, Plaintiffs persist seeking to litigate these same released claims in federal court in Ohio. *See* Declaration of Peter Wheeler ("Wheeler Dec." ¶ 5, Ex. 1 thereto).

Given the settlement agreement's arbitration provision, Defendants hereby request that the Court stay this action until such arbitration has been completed, in accordance with the terms of the settlement agreement, pursuant to FAA § 3.

## II. STATEMENT OF FACTS

### A. Brief History of Relevant Facts.

Zermatt owns and operates a financial services company in San Diego named WFASD. Plaintiffs bought the assets of a pre-existing company, Wheeler Frost Associates ("WFA"), including WFA's clients (SAC, ¶¶19-24), from its shareholders—the primary shareholder being Peter Wheeler ("Wheeler")—effective January 1, 2020. Wheeler continued to own the devalued WFA while WFA's former assets began operating as WFASD, which itself was owned by Zermatt.

The Asset Purchase Agreement ("APA") between WFA and Plaintiffs does not mention either of the Defendants, Cooper or CCCI. (Wheeler Dec., ¶2.) However, Wheeler and Cooper are friends and former business associates (*id.*) and Plaintiffs specifically acknowledge in the SAC (*Dkt.* 20 at ¶24) that WFA and Defendants had a business relationship, through which CCCI

2

referred clients to WFA, including clients impacted by the APA. (*Dkt.* 20 at ¶¶20-21.) Plaintiffs did not wish to continue the referral relationship between WFA and Defendants and, as a result, the parties entered into a Termination of Solicitor Agreement (the "Termination Agreement"). (*Id.* at ¶¶20-24.) Plaintiffs acknowledge they terminated WFA's referral relationship with Defendants and paid Defendants income owed to them as a result of referred clients transferred under the APA to Plaintiffs. (*Id.* at ¶¶23-24.)

Plaintiffs initially employed Wheeler pursuant to a five-year employment contract, with five-year non-compete and non-solicit provisions, as part of the APA. However, Plaintiffs fired Wheeler within a year and litigation ensued. (Wheeler Dec., ¶2.) Wheeler and Plaintiffs eventually reached a settlement regarding their competing claims for misconduct during a mediation, on or about October 21, 2022. (*Id.*, ¶3.) As a result of this settlement and effective January 1, 2023, Plaintiffs' lifted their non-compete and non-solicit provisions against Wheeler. (*Id.*)

In light of this January 1, 2023 settlement, Cooper sent letters on January 1, 2023 to his prior clients notifying them that Wheeler was back in business. (*Id.*, ¶4.) According to Plaintiffs, these letters were improper as containing "various misleading, disparaging, and false statements" about Plaintiffs. (*See Dkt.* 20 at ¶27.) As a result, Wheeler and Plaintiffs attended a mediation on March 21, 2023 to address this activity. (Wheeler Dec., ¶5.) Defendants maintain these letters were appropriate but Wheeler nonetheless paid Plaintiffs for a broad release of Defendants and others for this conduct and to buy peace, as described in Section II(B) below. (*Id.*, ¶6.)

B.  **The March 21, 2023 Settlement Agreement.**

Wheeler paid Plaintiffs consideration specifically *to include both Cooper and CCCI* as releasees in the March 21, 2023 settlement agreement (the "Agreement"). (*Id.; see also Dkt.* 20 at ¶ 31-32.) Key aspects of the Agreement included a broad general release, choice of venue (San Diego), and, pertinent to this motion, arbitration clauses for all releasees:

3

    4.       <u>Consideration by the Zermatt Parties</u>…

\*\*\*

    5.       …[T]he *Zermatt Parties…absolve and discharge Wheeler…as well as Chris Cooper* (the "Wheeler Releasees"), *from any and all claims…of whatever kind or nature in law, equity* or otherwise, in each case *whether known or unknown to the Zermatt Parties [including Zermatt and WFASD]…including but not limited to all such claims (1) arising out of or in any way connected with the Disputes*, or (2) *arising out of or in any way connected with any claim*…resulting from any act or omission by or on the part of the Wheeler Parties, *committed or omitted on or before the date that the Zermatt Parties sign this Agreement*…" (emphasis added).

\*\*\*

    8.       <u>Governing Law and Dispute Resolution</u>. This Agreement shall be construed in accordance with, and be deemed governed by, the laws of the State of California. *In the event of any dispute between them*, including related to a breach of this Agreement, or the October 2022 Settlement, *the Parties agree that they will submit such dispute to the exclusive jurisdiction of Judge Frederick Link* (Ret.) for resolution, *with venue in San Diego, California,* without prejudice to the right to seek preliminary injunctive relief in court as may be necessary and appropriate. *If for any reason Judge Link is not able to serve as the arbitrator,* the Parties agree to appoint an *arbitrator using Judicate West, and hereby waive any right to a jury trial…*" (emphasis added).

Section 5 of the Agreement emphasizes that this is a "General Release of All Claims." The scope of the release thus includes, but is not limited to, claims "arising from or in any way connected with the Disputes," which the Agreement broadly defines as including claims relating to the October 21, 2022 Settlement, the APA, and Wheeler's restrictive covenants and confidentiality obligations, among other claims.

Plaintiffs further concede that the Agreement and its attendant releases and arbitration clause cover Defendants' alleged "misleading, disparaging, and false statements" in the January 1, 2023 letters and Plaintiffs' alleged loss of customers as a result of those letters. (*Dkt*. 20 at ¶¶, 26-29.)

With the foregoing in mind, Plaintiffs filed the instant lawsuit, purportedly based upon "acts or omissions after March 21, 2023" that they incorrectly contend are not subject to the arbitration provision or release set forth in the Agreement. (*Id.*, at ¶32.) However, Plaintiffs' own SAC demonstrates that these alleged post-March 21, 2023 claims do relate and are connected to subject matter addressed by the Agreement and, as a result, must be resolved in accordance with the Agreement's arbitration clause. Similar to subject matter resolved by the Agreement, the alleged post-March 21, 2023 claims include:

- Claims relating to clients Plaintiffs acquired from WFA under the APA (*id.* ¶ 33; *see also* Count One, ¶¶38, 39, 40; Count Two, ¶¶43-45; Count Three, ¶¶51; Count Four, ¶59; Count Five, ¶66; Count Six, ¶67; Count Seven, ¶69-71);

- Claims relating to Defendants engaging in "contact with various CCCI Referrals . . . to have the CCCI Referrals terminate their business relationship with Plaintiffs" (*id.* ¶33; *see also,* Count II, ¶45) through false representations of fact (*id.; see also*, Count Three, ¶48; *see also*, Count Seven, ¶¶79-80);

- The resulting failure to "support and protect Plaintiffs' relationships" with clients referred by CCCI (*id.,* Count Four, ¶61; *see also,* Count One, ¶39; Count Five, ¶¶69, 70; Count Six, ¶¶ 74-76).

Due to Plaintiffs' insistence of filing this action in Ohio instead of following the Agreement and initiating arbitration, Defendants' counsel obtained an order clarifying the scope of the Agreement from the mutually-selected neutral who brokered it, Judge Frederick Link (Ret.). Judge Link is required to resolve future disputes such as this under the arbitration provision of the Agreement. (*See* Wheeler Dec., ¶7 and Ex. A (the "Link Order"), thereto.) Judge Link is a retired San Diego Superior Court Judge with over 40 years of experience and he works with Judicate

West, a California-based and well-established arbitration and mediation company. (*Id.*) This order clarifies the Agreement in detail, as well as the parties' obligations:

- The January 1, 2023, letters Cooper sent to various recipients (which are the subject of ¶¶ 26-29 in the SAC) were explicitly resolved by means of the Agreement. (*Link Order*, ¶2.)

- Cooper and CCCI [Defendants] are both releasees of the Agreement. (*Id.* at ¶¶1, 3.)

- The Agreement requires any dispute between to be resolved by arbitration in San Diego, California. (*Id.* at ¶4.)

- Cooper and CCCI are intended third-party beneficiaries to the Agreement that benefit from the Arbitration and Venue provisions of the Agreement. (*Id.* at ¶¶5-6.)[1]

- The Agreement released Cooper and CCCI from all known and unknown claims "arising out of, or in any way connected with, the disputes resolved in the Agreement." (*Id.* at ¶7.)

- Conduct after March 21, 2023 (of which there is none specifically alleged by Plaintiffs in the SAC) is not released "so long as this conduct or purported injury *does not arise out of, or is not in any way connected to, the disputes settled in the Agreement.*" (*Id.* at ¶9. (emphasis added).)

---

[1] Judge Link clarified that Cooper and CCCI are intended third-party beneficiaries of the Agreement and the arbitration clauses inure to their benefit. (*See* Link Order, ¶¶ 5-6.) Third-party beneficiary status may be determined as a question of law if there is no conflicting extrinsic evidence. *Kalmanovitz v. Bitting* (1996) 43 Cal.App.4th 311, 315. Consistent with the arbitrator's decision, a third-party beneficiary is allowed to enforce a contract to which he is not a signatory when based on the contract terms, as well as the relevant circumstances under which the contract was agreed to: (1) the third party would in fact benefit from the contract; (2) a motivating purpose of the contracting parties was to provide a benefit to the third party; and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. *Goonewardene v. ADP, LLC* (2019) 6 Cal. 5th 817, 830 (2019). Here, as an intended beneficiary of the release, and given the history of bargaining and payment of extra sums from Wheeler to Releasees to secure Defendants status as released parties, Defendants are third-parties that are expressly given the rights of the March 21, 2023 Agreement. Wheeler bargained for Defendants' inclusion, and paid a high price for it, so that Zermatt and WFASD could not drag Defendants into court anywhere they pleased—just into arbitration in San Diego before Judge Link.

As confirmed by Judge Link, Plaintiffs agreed to arbitrate disputes with Defendants *arising out of or connected to* the settlements and claims, including disputes arising from or connected to the January 1, 2023 letters and clients who left Plaintiffs' services after receiving a letter. Likewise, Section 8 of the Agreement confirms that any disagreement about the arbitration provision in the Agreement should also be resolved through arbitration.

### C. Plaintiffs' Breach of the March 21, 2023 Settlement Agreement Has Resulted in an Active Arbitration Case in San Diego.

In parallel, Cooper and Wheeler have filed an arbitration proceeding against Zermatt and WFASD in San Diego for Plaintiffs' breach of the Agreement by improperly initiating this lawsuit. The Agreement is clear—because Plaintiffs' claims are related to, arise out of, and are connected to the matters released by the Agreement, it should have been initiated in arbitration in San Diego, if at all. (Wheeler Dec., ¶8.) This arbitration proceeding is pending and is in active litigation. (*Id.*) Accordingly, if the Court grants a stay, Plaintiffs will have the ability to seek to file a cross-claim for any causes of action they determine have merit in this parallel arbitration

### III. LEGAL ARGUMENT

### A. The Court Should Stay this Action in Favor of Arbitration.

The Federal Arbitration Act ("FAA") "was enacted … in response to widespread judicial hostility to arbitration agreements."[2] *AT&T Mobile LLC v. Concepcion* (2011) 563 U.S. 333, 339 (citations omitted). The "overarching principle" of the FAA is that "arbitration is a matter of contract." *Am. Exp. Co. v. Italian Colors Rest*. (2013) 570 U.S. 228, 233. Additionally, the "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced

---

[2] The FAA applies because Plaintiffs' claims against Defendants "involve commerce." *See* 9 U.S.C. § 2; *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274 (1995) ("[T]he word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full.").

7

according to their terms." *Id*. at 344 (internal quotes and citations omitted); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019).

Because arbitration agreements are a matter of contract, parties may consent to arbitrate particular claims in a particular jurisdiction and according to particular rules. *Volt Information Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). When parties consent to arbitration, neither state principles of contract interpretation nor state policies can be used to coerce either party to litigate or arbitrate covered claims in a manner inconsistent with the agreement's terms. *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1415 (2019) (striking California rule of contract interpretation that effectively amended agreement to permit class-wide arbitration). "[B]roadly written arbitration clauses must be taken at their word and extend to situations that fall within their purview." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 396 (6th Cir. 2003)).

The Court must apply a four-part test to determine whether the parties are bound by a valid arbitration agreement:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.[3]

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

There is no dispute that Plaintiffs signed and are bound by the Agreement and its arbitration provision. (*Dkt*. 20 at ¶31; Wheeler Dec., ¶5.) Plaintiffs had bargained for the Agreement with

---

[3] Because Plaintiffs have not raised federal statutory claims and because all claims are subject to arbitration, this Court need not consider the third and fourth prongs of the test.

8

Wheeler, who was acting in part on behalf of Cooper and CCCI—explicit, intended third-party beneficiaries under the Agreement. *Id.*

Because, as explained below, no "grounds as exist at law or in equity for the revocation of" the Plaintiffs' agreement to arbitrate, the only remaining question is whether Plaintiffs' claims fall within the scope of the arbitration clause. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). To the extent there is any doubt as to whether a claim is arbitrable, this Court must resolve that doubt in favor of arbitration. *Simon v. Pfizer, Inc.*, 398 F.3d 765, 773 n.12 (6th Cir. 2005). The Sixth Circuit distinguishes between "broad" and "narrow" arbitration clauses. *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir.2005). Where the arbitration clause is broad, all claims are bound for arbitration absent an express provision excluding a particular dispute or the most forceful evidence of an intent to exclude a particular claim. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir.2004). There is no such evidence here; instead, compelling evidence exists showing the Agreement's arbitration clause is intended to be broad and apply to Plaintiffs' claims.

The Agreement[4] sets forth claims that must be arbitrated as including any claims concerning disputes about the Agreement, including those *arising out of or are in any way connected to any releases from which Defendants are beneficiaries.* (*See* Link Order, ¶¶ 4, 7; Exhibit A thereto Sections 4(a), 8.) The November 3, 2023, order from Judge Link confirms that

---

[4] An arbitration clause must be enforced unless a contractual defense "such as fraud, duress [or] unconscionability" applies. *Fazio*, 340 F.3d at 396; 9 U.S.C. § 2. The FAA only permits courts to invalidate arbitration agreements based on "'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (*quoting AT&T Mobility LLC*, 563 U.S. at 339). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Plaintiffs and Wheeler reached the Agreement while represented by counsel, and Plaintiffs' California counsel actually drafted the release language. (Wheeler Dec., ¶6.) There can be no argument of either procedural or substantive unconscionability. *See Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Devel't (US), LLC*, 55 Cal. 4th 223, 246 (2012).

Defendants are intended beneficiaries of Plaintiffs' releases under the Agreement and, importantly, that Defendants "benefit from the Arbitration and Venue provisions of the agreement." (*Link Order*, at ¶ 5-6.)

Judge Link's order confirms that, through the Agreement, Plaintiffs had released claims "arising out of, or in any way connected with" the January 1, 2023 letters and that related to lost referred customers and revenue resulting from those losses. (*Id.* at ¶ 2). As described in detail in section I(B) above and very similar to the released claims based upon the January 1, 2023 letters and the allegedly false representations in them, Plaintiffs' claims in this lawsuit again allege that Defendants are engaging in "contact with various CCCI Referrals . . . to have the CCCI Referrals terminate their business relationship with Plaintiffs" (SAC ¶33; *see also,* Count II, ¶45) through false representations of fact (*id.; see also*, Count Three, ¶48; *see also*, Count Seven, ¶¶79-80). As the claims in this lawsuit "arise out of" and are "in any way connected" to the released "Disputes" in the Agreement, they are also released, even though they occurred after March 21, 2023. Put another way, Plaintiffs' SAC alleges claims arising out of and connected to the same core dispute with Defendants that were released in the Agreement, even if these claims purport to reference events after the parties entered into the Agreement. (*See id.* at ¶¶ 2, 7, 9.)

In fact, Plaintiffs even agreed that any dispute over the scope of the Agreement's release (or the arbitration agreement itself) must also be subject to the Agreement's arbitration requirement. The Agreement's arbitration clause, as clarified and confirmed by Judge Link, includes "any dispute" between Plaintiffs and the released parties concerning the Agreement. The broad arbitration clause makes clear that Plaintiffs' claims in this suit fall squarely within its clause's purview.

Accordingly, if the Court is satisfied that the issues here are referable to arbitration, FAA § 3 states that the Court "shall … stay the action until such arbitration has been had in accordance with the terms of the agreement[.]." 9 U.S.C. §3.

### B. In the Alternative, the Court Should Stay the Action due to the Related and Pending Arbitration filed by Cooper and Wheeler against Plaintiffs in San Diego.

This Court has authority to stay claims against non-signatories of an arbitration pending the outcome of arbitration between the parties to an arbitration agreement. *See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. at 20 n. 23, 103 S.Ct. 927. Exercising that discretion is warranted here. As explained above, an arbitration currently exists between Cooper and Wheeler against Plaintiffs concerning Defendants and this Agreement. A stay is justified when a lawsuit against a non-signatory depends upon the same facts and is inherently inseparable from the arbitrable claims, which is the case here. *See Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir.2002).

Forcing Defendants to participate in simultaneous litigation of these disputes in two separate actions risks inconsistent judgments and will cause Defendants to unfairly expend time and incur additional legal expenses. *See Wilkerson v. Sullivan*, 727 F.Supp. 925, 936 (E.D. Pa. 1989) (a legal remedy is generally inadequate if it results in a multiplicity of lawsuits) *reversed in part on other grounds*, 904 F.2d 826 (3rd Cir. 1990). For this second, independent reason, the Court should stay Plaintiffs' claims, pending arbitration.

## IV.   CONCLUSION

For the foregoing reasons, the Court should stay this action pending arbitration of Plaintiffs' claims pursuant to the Agreement.

Dated: November 22, 2023

        Respectfully submitted,

        */s/ Philip R. Bautista*
        Philip R. Bautista (0073272)
        pbautista@taftlaw.com
        Daniel H. Bryan (0095309)
        dbryan@taftlaw.com
        TAFT STETTINIUS & HOLLISTER LLP
        200 Public Square, Suite 3500
        Cleveland, Ohio 44114-2302
        Telephone: (216) 241-2838
        Facsimile: (216) 241-3707

        *Attorneys for Defendants Martin Christopher Cooper and Chris Cooper & Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

*/s/ Philip R. Bautista*
*Attorney for Defendants*
*Martin Christopher Cooper and*
*Chris Cooper & Company, Inc.*

129929176