UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ZERMATT HOLDINGS, LLC, ET AL., | ) CASE NO. 3:23-cv-01423-JJH |
| | ) |
| | ) JUDGE JEFFREY J. HELMICK |
| Plaintiffs, | ) |
| | ) REPLY BRIEF IN SUPPORT OF |
| v. | ) DEFENDANTS' MOTION TO STAY |
| | ) PENDING ARBITRATION |
| MARTIN CHRISTOPHER COOPER, ET AL., | ) |
| | ) |
| | ) |
| Defendants. | |

## I. INTRODUCTION.

Defendants Martin Christopher ("Chris") Cooper ("Cooper") and Chris Cooper & Company, Inc. ("CCCI") (collectively, "Defendants") seek a stay of this action under the Federal Arbitration Act ("FAA") due to a binding settlement agreement signed by Plaintiffs Zermatt Holdings, LLC ("Zermatt") and WFA of SAN DIEGO, LLC ("WFASD") (collectively, "Plaintiffs") entered into on March 21, 2023, which includes Defendants as intended beneficiaries and releasees. Plaintiffs have conceded that they signed the agreement, which speaks for itself. That agreement plainly has a valid and binding arbitration provision that covers this dispute which Defendants may enforce as third-party beneficiaries. Further, an order from the arbitrator, which Plaintiffs' own attorneys solicited from the arbitrator in California, confirms what the agreement says and makes clear that this dispute must be resolved in arbitration. Therefore, this Court should stay this action in accordance with the arbitration agreement Plaintiffs signed.

1

## II. THIRD-PARTY BENEFICIARIES CAN ENFORCE ARBITRATION AGREEMENTS UNDER § 3 OF THE FEDERAL ARBITRATION ACT.

### A. §3 OF THE FEDERAL ARBITRATION ACT IS APPLICABLE TO THIS ACTION.

Contrary to Plaintiffs' assertion, the Supreme Court has definitively ruled that non-signatory third-party beneficiaries may enforce arbitration obligations and that state law is "applicable to determine which contracts are binding under § 2 and enforceable under § 3 [of the FAA] if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 493, n.9 (1987)). The Supreme Court in *Arthur Anderson* overturned a 6th Circuit Court of Appeals decision that had declined to enforce §3 of the FAA. The Supreme Court held that state contract law governing the contract at issue allowed the contract to "be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, ***third-party beneficiary theories***, waiver and estoppel." *Id*. at 631 (internal citations omitted) (emphasis added). In fact, the plaintiff in *Arthur Anderson* made ***the exact same argument Plaintiffs make here***: that is, as a matter of federal law, claims to arbitration by non-parties are not subject to arbitration under § 3 of the FAA. But the Supreme Court disagreed, stating:

> Perhaps that would be true if § 3 [of the FAA] mandated stays only for disputes between parties to a written arbitration agreement. *But that is not what the statute says*. It says that stays are required if the claims are 'referable to arbitration under an agreement in writing.' If a written arbitration provision is made enforceable against (or for the benefit of) a *third party under state contract law*, the statute's terms are fulfilled.
> (*Id*. at 631, *quoting § 3 of the FAA*)

*Id*. at 631 (quoting § 3 of the FAA) (emphasis added).

District Courts in Ohio have, accordingly, reached the same result. *See*, *e.g.*, *Thibault v. Heartland Recreational Vehicles, LLC*, No. 2:18-cv-732, 2019 WL 1274729, at *6 (S.D. Ohio Mar. 19, 2019) ("In the Sixth Circuit, nonsignatories may be bound to arbitration agreements under

2

ordinary contract and agency principles." (quotation omitted)). And going one step further, a recent ruling in the Southern District of Ohio determined dismissal pursuant to the FAA and F.R.C.P. 12(b)(6) was equally appropriate under similar circumstances. *See Baughman v. KTH Parts Indus., Inc*., No. 3:19-cv-8, 2020 WL 1853207, at *7-8 (S.D. Ohio Apr. 13, 2020). In *Baughman*, the Court determined that a non-signatory defendant could enforce an arbitration agreement signed between the plaintiff and a third-party under the FAA where the non-signatory defendant was an intended third-party beneficiary. The Court in *Baughman* considered: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; (3) whether the claims are arbitrable; and (4) whether if some, but not all, claims were arbitrable, if the case should be stayed pending arbitration. *Id.* Ultimately, the Court in *Baughman* determined the arbitration agreement was broad enough to satisfy all these issues and went so far as to dismiss the plaintiff's claim for failure to state a claim upon which relief could be granted. *Id.*

Here, as in *Baughman*, and as to the first two factors of that case, the Agreement has a broad arbitration agreement covering "any dispute" related to a released activity. For that, Peter Wheeler ("Wheeler") paid a substantial settlement sum to include Defendants as third-party beneficiary releasees. This endowed to Defendants the benefits of the March 21, 2023 settlement agreement (the "Agreement"). As to the third and fourth factors discussed in *Baughman,* Plaintiffs' claims about Defendants' January 2023 letters were a motivating factor for why Defendants were included in the Agreement—the very same dispute that now forms the foundation of Plaintiffs' current suit before this Court. *Dkt.* 22-1 ("Wheeler Dec.") at 2-3, 6-10[1]; *see also Dkt.* 20, Second Amended Comp. ("SAC"), ¶¶ 26-31. As a result, the claims Plaintiffs assert against Defendants in this case are arbitrable claims that should have been brought in San

---

[1] References to page numbers on ECF documents are references to the ECF-stamped page number, not native page numbers.

3

Diego, as the Agreement intends. Nevertheless, because the arbitration agreement is valid, enforceable and binding, and the *Baughman* factors each weigh in favor Defendants, Plaintiffs' case against Defendants should be stayed under FAA § 3.

Worth noting, Plaintiffs are signatories to the arbitration agreement at issue and this is not a case in which enforcement is sought against a non-signatory. *See e.g.*, *Thibault*, 2019 WL 1274729, *6 (requiring signatory plaintiff to arbitrate its claims against non-signatory defendants under estoppel theory because "it matters whether the party resisting arbitration is a signatory or not") (quotation and citation omitted)). For this reason as well, this matter should be stayed under FAA § 3.

Further, Plaintiffs' singular reliance on *Asahi Glass Co. v. Toledo Eng. Co., 262* F. Supp. 2d 839 (N.D. Ohio 2003) to avoid their arbitration obligation is misplaced. *Asahi Glass* was decided **before** *Arthur Anderson* and, in fact, does not address the third-party beneficiary issue at all. *Asahi Glass Co.*, 262 F. Supp. at 840-41. In *Asahi Glass*, the plaintiff (Asahi), a Japanese glass manufacturer, and Schott, a German manufacturer, had a 1992 contract that included an arbitration agreement (the "1992 Contract"). The defendant, TECO, was not signatory to the 1992 Contract (and presumably unknown to Asahi at the time the 1992 Contract was executed). *See id*. The Court in *Asahi Glass* held that TECO could not require arbitration by Asahi pursuant to §3 of the FAA (a holding contrary to subsequent Supreme Court precedent), but, pivotally, TECO did not argue it was an intended third-party beneficiary of the 1992 Contract. A third-party beneficiary's ability to enforce an arbitration agreement was never at issue in *Asahi Glass*, thus it is not applicable to the facts or law of Plaintiffs' case.[2]

---

[2] Defendants and Wheeler had a long-standing relationship, wherein Defendants acted as a solicitor agent for Defendant WFASD's predecessor, Wheeler Frost and Associates ("WFA"). Dkt. 22-1 at 1-2; *see also* Dkt. 20, ¶ 32. Defendants refused to enter into a solicitor agreement with WFASD, which may be the source of Plaintiffs'

4

### B. Defendants are Intended Third-Party Beneficiaries Under California Law.

The March 21, 2023, Settlement Agreement (the "Agreement"), which Plaintiffs signed, expressly states it "shall be construed in accordance with, and be deemed governed by, the laws of the State of California." *Dkt.* 22-1 at 9. As explained below, Defendants are intended third-party beneficiaries of the contract under California law, such that they can enforce the Agreement's broad arbitration clause.

Under California law, third-party beneficiary status may be determined as a question of law if there is no conflicting extrinsic evidence. *Kalmanovitz v. Bitting,* 43 Cal. App. 4th 311, 315 (Cal. Ct. App. 1996). A third-party beneficiary is allowed to enforce a contract to which it is not a signatory when, based on the contract terms, including arbitration provisions within contracts, and the relevant circumstances under which the contract was agreed to: (1) the third party would in fact benefit from the contract; (2) a motivating purpose of the contracting parties was to provide a benefit to the third party; and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. *Goonewardene v. ADP, LLC,* 6 Cal. 5th 817, 830 (2019). A third-party beneficiary to an agreement may enforce an arbitration clause even if it is not named in the agreement. *Nguyen v. Tran,* 157 Cal. App. 4th 1032, 1036 (Cal. Ct. App. 2007).

In addition, California has a long established and well settled policy favoring arbitration as a speedy and inexpensive means of settling disputes. *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street,* 35 Cal. 3d 312, 322 (1983); *Hightower v. Superior Ct.*, 86 Cal.

---

antagonism reflected in the current lawsuit. However, Defendants are not unknown persons or entities to Plaintiffs, as TECO may have been to Asahi Glass in *Asahi Glass.* To the contrary, Defendants were central in the negotiations leading up to the Agreement and previously acted as an agent for WFA, which was known to Plaintiffs.

App. 4th 1415, 1431 (Cal. Ct. App. 2001). Further, the limitations placed on judicial review and oversight of an arbitration award have resulted in a substantial deference to the arbitrator's own assessment of his or her authority to resolve an issue. *Advanced Micro Devices, Inc. v. Intel Corp.*, 9 Cal. 4th 362, 372–73 (1994).

Here, the plain language of the Agreement and Plaintiffs' own SAC confirms that Defendants are intended beneficiaries of the Agreement. First, Plaintiffs' release in the Agreement includes "agents" of Wheeler and the crux of Plaintiffs' SAC is that Defendants are acting as Wheeler's agent and at the expense of Plaintiffs' customer relationships. *See e.g.*, *Dkt.* 20, ¶¶ 26, 31, and 35. Second, specifically as to Cooper, Plaintiffs' release in the Agreement includes "agents, whether current or former, as well as Cooper." *Dkt.* 21-1 at 8. Third, specifically as to CCCI, Plaintiffs' complaint concedes that "[i]n August, 2023, Plaintiff and Wheeler agreed that the March 21, 2023 settlement agreement would also include CCCI…." *Dkt.* 20, ¶32.

Accordingly, Defendants' status as third-party beneficiaries under the plain language of the Agreement comports and is evidenced by Wheeler's intent of buying a release for Defendants from Plaintiffs and their obligation to arbitrate any disputes before the parties' chosen arbitrator, Judge Frederick Link. Because Defendants are veritable third-party beneficiaries, the Court should stay this dispute pending arbitration pursuant to Section 3 of the Federal Arbitration Act for this first reason.

### III. THE ARBITRATOR'S NOVEMBER 3, 2023, ORDER FURTHER CONFIRMS THAT THE DEFENDANTS ARE THIRD-PARTY BENEFICIARIES TO THE AGREEMENT AND THAT PLAINTIFFS ARE REQUIRED TO ARBITRATE THIS DISPUTE.

As will be more fully briefed in the opposition to Plaintiffs' Motion to Strike (*Dkt.* 24), which will be filed on or before December 20, 2023, Judge Link's November 3, 2023, order (the "Order") is binding, admissible, and highly relevant to the issues before this Court. Judge Link was *acting as an arbitrator* when issuing the Order—not a mediator, as Plaintiffs assert in their

Brief in Opposition. And even if he were not acting as an arbitrator, California law permits statements provided by a mediator to be used as evidence after a settlement is reached, if the parties agree to do so.

### A. JUDGE LINK'S ORDER IS ISSUED BY JUDGE LINK AS AN ARBITRATOR.

The Agreement requires disputes to be submitted "to the exclusive jurisdiction of Judge Frederick Link (Ret.) for resolution" and, indeed, numerous disputes have already been submitted to Judge Link by Wheeler and Plaintiffs. *Dkt.* 22-1 at 9; *see also* Exhibit A, hereto ("Wilson Dec."), ¶¶4-10. These disputes include a discovery order regarding the hard drive search of Wheeler, disputes regarding Plaintiffs' ongoing harassment of Defendants, and other disputes. Wilson Dec. ¶3-4. As of July 14, 2023, Judicate West, the arbitration and mediation company with which Judge Link is a neutral, assigned an arbitration number for the resolution of disputes and set a full-day arbitration hearing on August 14, 2023, to hear evidence of these disputes. *Id.,* ¶ 5, exhibit 1 thereto. Judicate West, the company that administers alternative dispute resolution for Judge Link, repeatedly referred to the August 14, 2023, hearing as a binding arbitration hearing. *Id.*, ¶¶ 6, 8, exhibits 2-3 thereto. Counsel for Plaintiffs and Wheeler submitted briefs in advance of this hearing and all parties to this August 14, 2023, arbitration hearing agreed that Judge Link should issue an order to clarify the Agreement, including the third-party beneficiaries to the Agreement and the claims subject to its arbitration clause (the "Order"). *Id.*, ¶ 7.

After this in-person, August 14, 2023, arbitration hearing and a follow-up call, Judge Link issued the Order as an arbitrator as contemplated by the Agreement. *Id.*, ¶¶ 9-10, exhibits 4-6 thereto.[3] Because Judge Link was operating in his capacity as an arbitrator, this Order—including

---

[3] Derek Wilson, California counsel for Defendants and Wheeler, wrote Judge Link on October 25, 2023: "Mr. Holder and I were able to speak and propose multiple versions of attempted joint proposed orders. Unfortunately, we both

7

its order on arbitrable claims—is binding on Plaintiffs. The Order confirms beyond any doubt that Defendants are intended third-party beneficiaries of the Agreement and benefit from the broad arbitration provision contained in the Agreement. Plaintiffs do not and, indeed, cannot deny that they requested—and Judge Link issued—this Order that now operates against them. And while Plaintiffs have attempted to create confusion as whether the August 14 hearing resulting in the Order was a mediation (giving rise to the confidentiality issues raised in Plaintiffs' Brief in Opposition (*Dkt.* 23)) or arbitration, Judge Link and Judicate West have indicated that any Order issued by Judge Link is in his role ***as an arbitrator***. Wilson Dec., ¶¶ 7-10.

### B. EVEN IF DEEMED A STATEMENT BY A MEDIATOR, THE ORDER IS ADMISSIBLE.

Mediation communications are generally confidential to allow the parties to negotiate without fear of reprisal, should a settlement not be reached. However, when a disagreement exists about the application of a settlement, a mediator's clarification on the settlement is indeed admissible, if the parties agree to have a mediator offer clarification. *Radford v. Shehorn,* 187 Cal. App. 4th 852, 853 (Ca. Ct. App. 2010) (*citing Cal. Evid Code* § 1121).

Here, Wheeler and Plaintiffs have submitted numerous ongoing disputes to Judge Link and the attorneys for all signatories to the Agreement specifically requested him to issue the Order clarifying the Agreement. Wilson Dec., ¶¶4, 7, 9. Plaintiffs' suggestion that the Order is confidential lacks merit because *Plaintiffs specifically requested this clarification.*

Judge Link ultimately decided to sign the Order that Wheeler proposed—an Order supporting the arbitration of the dispute between the Parties. Judge Link did not sign the two

---

had items we wanted in the order that the other side would not agree with. We have agreed to independently provide proposed orders at noon today. Attached is the Claimants' proposed order." (Wilson Dec. ¶ 9, exhibit 4 thereto).

Matthew Holder, California counsel for Plaintiffs, also wrote to Judge Link and copied Mr. Saba, Ohio counsel for Plaintiffs on October 25, 2023: "[f]ollowing up on yesterday's call, the parties were not able to reach agreement on a proposed order for your signature. On behalf of Zermatt and WFASD, we presented two versions to Wheeler and Cooper…Attached are these two proposed versions, for your consideration...." (Wilson Dec. ¶ 9, exhibit 5 thereto).

orders proposed by Plaintiffs. Wilson Dec. ¶ 10. Yet, in any event, both proposed Orders *submitted by Plaintiffs* concede that Defendants are releasees and intended third-party beneficiaries to the Agreement. Wilson Dec. ¶ 9, exhibit 5 thereto. This is, of course, consistent with Plaintiffs' allegations in the SAC that Defendants were intended beneficiaries of the Agreement. *See e.g.*, *Dkt.* 20, ¶¶31-32.

Because Plaintiffs and Wheeler solicited the Order clarifying the settlement from Judge Link, Judge Link's Order is admissible and Plaintiffs should be bound by it. For this second, independent reason, this case should be stayed pending arbitration pursuant to Section 3 of the FAA.

### IV. DEFENDANTS WILL FACT UNDUE HARDSHIP IF THIS CASE IS ALLOWED TO CONTINUE AND IS NOT STAYED PENDING THE ARBITRATION BETWEEN PLAINTIFFS, COOPER, AND WHEELER.

Plaintiffs concede in their Brief in Opposition (*Dkt.* 23 at 6) that they, Cooper, and Wheeler have an active arbitration with Judge Link that relates to the Agreement, in which Cooper and Wheeler assert claims involving Plaintiffs' wrongful conduct since the Agreement's signing. Wilson Dec. ¶ 11. In their Brief in Opposition, Plaintiffs do not address, thereby conceding, that they can assert claims against Cooper in this Arbitration. Plaintiff further sidesteps altogether, thereby also conceding, that they could bring a claim against CCCI in an arbitration in California, before Judge Link, despite their argument that CCCI is not a party to the arbitration. *Dkt.* 23 at 6. Indeed, Plaintiffs cannot refute that their claims in this lawsuit are based upon the same purported wrongful solicitation of customers in Ohio and loss of clients released under the Agreement and that should be arbitrated with Judge Link.

In light of the pending arbitration, Defendants will face undue hardship, not Plaintiffs, by being forced to continue litigating the present action. If forced to litigate both in California and Ohio—in two different forums—Defendant will incur additional, substantial attorneys' fees and

costs, as well as run the risk of inconsistent rulings between Plaintiffs' chosen arbitrator and this forum. Plaintiffs have not given *any* reason why they are unable to simply assert their claims before Judge Link at Judicate West as the Agreement and Order require, and as they had agreed to do (and as has been done in the past). And while Plaintiffs argue there are witnesses in Ohio, virtual depositions are commonplace and many of the witnesses also reside in California, including Defendant Cooper himself, Wheeler, and WFASD's own employees. Wilson Dec., ¶ 12.

Thus, should the Court decide not to stay the case based on § 3 of the FAA, the Court should nonetheless exercise its discretion in staying the matter pending the outcome of the California arbitration.

V. **CONCLUSION.**

For the reasons stated herein, Defendants request the Court stay this action and order it to arbitration in accordance with the terms of the Agreement and subsequent Order clarifying the Agreement.

DATED: December 13, 2023  Respectfully submitted,

*/s/ Philip R. Bautista*
Philip R. Bautista (0073272)
pbautista@taftlaw.com
Daniel H. Bryan (0095309)
dbryan@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
Telephone: (216) 241-2838
Facsimile: (216) 241-3707

*Attorneys for Defendants Martin Christopher Cooper and Chris Cooper & Company, Inc.*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on December 13, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DATED: December 13, 2023

                                            */s/ Philip R. Bautista*

                                            *Attorneys for Defendants Martin Christopher Cooper and Chris Cooper & Company, Inc.*