## CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Confidential Settlement Agreement and Mutual General Release (the "Agreement") is made by and between PETER R. WHEELER ("Wheeler"), on the one hand, and ZERMATT HOLDINGS LLC, a North Carolina limited liability company ("Zermatt") and WFA of San Diego, LLC, a North Carolina limited liability company ("WFASD") (together, the "Zermatt Parties"), on the other hand. Each of Wheeler, Zermatt, and WFASD shall be referred to as a "Party," and together as "the Parties."

1.  Recitals.

a.  Wheeler is the controlling shareholder of Wheeler Frost Associates, Inc. ("WFA"). Prior to January 1, 2020, WFA operated an investment advisory, wealth management, and financial planning business doing business as WFA Wealth Managers.

b.  Effective January 1, 2020, Wheeler, among others, entered into an Asset Purchase Agreement (the "APA") whereby they agreed to sell to Zermatt certain assets (described in the APA as the "Purchased Assets") of the "WFA Business," as defined therein. As part of the APA, Zermatt made an initial payment to WFA, and also agreed to make future payments post-closing to Wheeler, among others (the "Future Payments").

c.  Also effective January 1, 2020, Wheeler entered into an employment agreement with WFASD (the "Employment Contract"). The Employment Contract included various provisions related to certain benefits Wheeler would be entitled to in the event his employment was terminated without Cause, as defined in the Employment Contract (the "Future Benefits").

d.  As part of both the APA, and the Employment Contract, Wheeler agreed to certain Non-Disclosure/Non-Competition Covenants for the benefit of the Zermatt Parties (the "Non-Disclosure/Non-Competition Covenants").

e.  During the course of 2020, WFA, at the direction of the Zermatt Parties, applied for and received a Paycheck Protection Program loan (the "PPP Loan") for the purpose of supporting WFASD's operations. A dispute has arisen between the Parties about the PPP Loan, in that Wheeler has questioned whether the PPP Loan was improperly obtained and used and has demanded that the Zermatt Parties repay the PPP Loan. The Zermatt Parties have denied any wrongdoing in connection with the PPP Loan and instead have asked Wheeler to cooperate in applying for forgiveness of the PPP Loan (the "Forgiveness Request"). Wheeler has refused to do so for the above reasons. Wheeler also has represented to the Zermatt Parties that he has filed a complaint with the U.S. government regarding the PPP Loan ("Wheeler's PPP Whistleblower Claim").

f.  Effective December 31, 2020, WFASD terminated Wheeler's employment. A dispute has arisen among the Parties as to whether the termination was without Cause, and/or was otherwise wrongful. The APA and Employment Contract call for certain payments being owed to Wheeler in the event he is terminated without Cause.

**EXHIBIT 1**

g. On February 5, 2021, the Zermatt Parties filed a civil lawsuit against Wheeler in San Diego Superior Court, Case No. 37-2021-00005599 (the "Zermatt Lawsuit"). The Zermatt Lawsuit alleged, among other things, that Wheeler had breached, and was otherwise threatening to breach, the Non-Disclosure/Non-Competition Covenants, as well as other provisions of the Employment Contract related to, for example, the use and return of property. The Zermatt Parties sought injunctive relief in the form of a Temporary Restraining Order ("TRO") and preliminary injunction ("PI"). In response, Wheeler contended, among other things, that the Non-Solicitation/Non-Competition Covenants are unenforceable, overbroad, and unconscionable. On February 18, 2021, the Court granted the Zermatt Parties' request for the TRO, and on March 11, 2021, the Court granted the Zermatt Parties' request for the PI.

h. In September 2021, Wheeler filed an arbitration claim against the Zermatt Parties, which was subsequently amended twice (together, the "Arbitration Claim"). The Zermatt Parties asserted a counterclaim against Wheeler, which was also amended (the "Counterclaim").

i. The Parties have vigorously contested their competing claims and defenses, including in connection with the APA, the Future Payments, the Employment Contract, the Future Benefits, the Non-Disclosure/Non-Competition Covenants, the PPP Loan, the Forgiveness Request, Wheeler's PPP Whistleblower Claim, the Zermatt Lawsuit, the TRO, the PI, the Arbitration Claim, and the Counterclaim. These competing claims and defenses are referred collectively to as the "Disputes." Except as otherwise set forth herein, the Parties desire to resolve the Disputes, and all issues raised by or related to the Disputes, along with all known and unknown claims as set forth in the releases below, without the further expenditure of time or the expense of contested litigation, notwithstanding the fact that they might learn new facts and develop new arguments were they to pursue contested litigation and the discovery process related thereto. For these reasons, they have entered into this Agreement.

2. <u>No Admission of Liability</u>. The Parties expressly deny any violation of any federal, state or local statute, ordinance, rule, regulation, policy, order or other law, or any contract or other duty owed to each other, and further deny any liability to each other. This Agreement is the compromise of disputed claims and nothing contained herein is to be construed as an admission of liability on the part of the Parties, by whom liability is expressly denied. Accordingly, while this Agreement resolves all issues referenced herein, it does not constitute an adjudication or finding on the merits of the allegations in the Disputes and it is not, and shall not be construed as, an admission by the Parties, or any of them, of any wrongdoing or any liability.

3. <u>Consideration by the Zermatt Parties</u>. Except as otherwise set forth herein, in consideration of and in return for the promises and covenants undertaken herein by Wheeler, and for other good and valuable consideration, receipt of which is hereby acknowledged:

a. The Zermatt Parties shall pay to Wheeler the total gross sum of Seven Hundred and Fifty Thousand Dollars and Zero Cents ($750,000.00) (the "Settlement Payment"). The Settlement Payment shall be made by way of two checks, one for $650,000.00 made out to Peter Wheeler, and a second for $100,000.00 made out to the Law Offices of Derek J. Wilson. Both payments will result in a Form 1099 being issued to the payees. Payment shall be made no later than December 31, 2022 (the "Payment Date"), provided that Wheeler has delivered to the

Zermatt Parties, through counsel, an executed IRS Form W-9 for Peter Wheeler and the Law Offices of Derek J. Wilson.

      b.      Except as otherwise set forth herein, the Zermatt Parties, on behalf of themselves, their predecessors, successors, owners, subsidiaries, and other affiliates, hereby acknowledge full and complete satisfaction of and do hereby release, absolve and discharge Wheeler and WFA, including their predecessors, successors, owners, shareholders, parent entities, subsidiaries, affiliates, trustees, insurers, officers, directors, employees, attorneys and agents, whether current or former (the "Wheeler Releasees"), from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, grievances, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, in each case whether known or unknown to the Zermatt Parties, which the Zermatt Parties now own or hold or have at any time owned or held as against the Wheeler Releasees, including but not limited to all such claims (1) arising out of or in any way connected with the Disputes, or (2) arising out of or in any way connected with any claim, loss, damage or injury whatever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of the Wheeler Parties, committed or omitted on or before the date that the Zermatt Parties sign this Agreement. This release does not, however, release claims that cannot be released as a matter of law, nor does it release any claims based on any failure by Wheeler to perform under the terms of this Agreement. In addition, in releasing WFA, the Zermatt Parties are not releasing any claims against Frost, Arce, and White.

      c.      Within ten (10) days of the Payment Date, the Zermatt Parties shall dismiss without prejudice the Zermatt Lawsuit, and also work with the Wheeler Parties to mutually dismiss the Arbitration Claim and Counterclaim. The Zermatt Parties agree to bear their own attorneys' fees and costs incurred in connection with the Zermatt Lawsuit, Arbitration Claim, and Counterclaim, and all other matters relating to any of the Disputes and/or this Agreement.

      d.      The Zermatt Parties shall be solely responsible for repayment of the principal and any accrued interest for the PPP Loan.

      e.      Effective on the Payment Date, Claimant shall be released from all obligations under the Non-Competition Covenants in Section 8.3 of the APA, and Section 1.3 of the Non-Disclosure/Non-Competition Schedule in the Employment Contract. However, the Non-Disclosure Covenants in Section 8.2 of the APA, and Section 1.2 of Non-Disclosure/Non-Competition Schedule in the Employment Contract, shall remain in full force and effect.

    4.      <u>Consideration by Wheeler</u>. Except as otherwise set forth herein, in consideration of and in return for the promises and covenants undertaken herein by the Zermatt Parties, and for other good and valuable consideration, receipt of which is hereby acknowledged:

      a.      Wheeler, on behalf of himself, his predecessors, successors, parents, owners, subsidiaries, and other affiliates, hereby acknowledges full and complete satisfaction of and does hereby releases, absolves and discharges the Zermatt Parties, including their predecessors, successors, owners, shareholders, parent entities, subsidiaries, affiliates, trustees, insurers, officers, directors, employees, attorneys and agents, whether current or former (the

"Zermatt Party Releasees"), from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, grievances, wages, vacation payments, severance payments, obligations, commissions, overtime payments, debts, profit sharing claims, expenses, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, whether known or unknown to Wheeler which Wheeler now owns or holds or has at any time owned or held as against the Zermatt Party Releasees, or any of them, including specifically but not exclusively and without limiting the generality of the foregoing, any and all claims, demands, grievances, agreements, obligations and causes of action, known or unknown, suspected or unsuspected: (1) arising out of or in any way connected with the Disputes; or (2) arising out of or in any way connected with any claim, loss, damage or injury whatever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of the Zermatt Party Releasees, or any of them, committed or omitted on or before the date that Wheeler signs this Agreement. WHEELER AGREES AND ACKNOWLEDGES HE IS WAIVING ANY RIGHT TO RECOVERY BASED ON STATE OR FEDERAL AGE, SEX, PREGNANCY, RACE, COLOR, NATIONAL ORIGIN, MARITAL STATUS, RELIGION, VETERAN STATUS, DISABILITY, SEXUAL ORIENTATION, MEDICAL CONDITION OR OTHER ANTI-DISCRIMINATION LAWS, INCLUDING, WITHOUT LIMITATION, TITLE VII, THE AGE DISCRIMINATION IN EMPLOYMENT ACT, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE AMERICANS WITH DISABILITIES ACT AND THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, ALL AS AMENDED, WHETHER SUCH CLAIM BE BASED UPON AN ACTION FILED BY EMPLOYEE OR BY A GOVERNMENTAL AGENCY. This release does not, however, release claims that cannot be released as a matter of law, nor does it release any claims based on any failure by the Zermatt Parties to perform under the terms of this Agreement. In addition, the releases given by Wheeler shall not be construed as releasing any claims of Frost, Arce, and White.

b.      Wheeler agrees that in providing the releases contained herein, he is also releasing any ability he would have as the controlling shareholder of WFA to cause WFA to bring any claims against the Zermatt Party Releasees to the extent those claims are otherwise being released by Wheeler, *e.g.*, claims for breach of the APA and/or fraudulent inducement of the APA. Wheeler agrees that he will not do anything to cause or encourage WFA to bring any such claims against the Zermatt Party Releasees. Wheeler further agrees that in the event he sells, transfers, or otherwise disposes of some or all of his interest in WFA, he will ensure that his promises in this section 4(b) bind his successors, and that his successors agree to the same. Likewise, in the event Wheeler acquires any greater interest in WFA, he will not use his newly-acquired interests in a manner inconsistent with his obligations in this section 4(b).

c.      By entering into this Agreement, Wheeler hereby waives all of his rights for any additional payment or other consideration under the APA and Employment Contract, including with respect to the Future Payments and the Future Benefits, other than as set forth in this Agreement. Wheeler hereby acknowledges and agrees that he and WFA have been paid all compensation owed to them under the APA and Employment Contract (whether in the past, now, or in the future), and shall be paid nothing more pursuant to either agreement and/or the employment relationship between Wheeler and WFASD. Wheeler is accepting the payments provided for in this Agreement in satisfaction of all of his claims and rights to payment or other consideration under the APA and Employment Contract.

      d.      The Zermatt Parties make no representations as to the tax treatment or legal effect of the Settlement Payment, and Wheeler is not relying on any statement or representation of the Zermatt Parties in this regard. Wheeler understands and agrees that, regardless of whether assessed to Wheeler or against the Zermatt Parties, that Wheeler will be solely responsible for the payment of any taxes and penalties assessed on the sum, including any payment or penalty assessed under any legislation and any payment or penalty assessed due to the timing of the payment.

      e.      Within ten (10) days of the Payment Date, the Wheeler Parties shall work with the Zermatt Parties to mutually dismiss the Arbitration Claim and Counterclaim. The Wheeler Parties agree to bear their own attorneys' fees and costs incurred in connection with the Zermatt Lawsuit, Arbitration Claim, and Counterclaim, and all other matters relating to any of the Disputes and/or this Agreement.

      5.      <u>General Release of All Claims</u>. Except as otherwise set forth herein or for purposes of enforcing this Agreement, it is the intention of the Parties in executing this instrument that it shall be effective as a bar to each and every claim, demand, grievance and cause of action hereinabove specified. In furtherance of this intention, the Parties hereby expressly waive any and all rights and benefits conferred upon each other by the provisions of Section 1542 of the California Civil Code and expressly consent that this Agreement shall be given full force and effect according to each and all of its express terms and provisions, including those relating to unknown and unsuspected claims, demands and causes of action, if any, as well as those relating to any other claims, demands and causes of action hereinabove specified. Section 1542 provides:

      **"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

Having been so apprised, the Parties nevertheless hereby voluntarily elect to and do waive the rights described in Civil Code Section 1542 and elect to assume all risks for claims herein specified that now exist in their favor, *known or unknown*.

      6.      <u>Communications with the Government</u>. Nothing in this Agreement shall prevent or otherwise limit the ability of any of the Parties to communicate with any governmental entity about any of the matters covered by this Agreement, *e.g.*, the PPP Loan. The Parties represent and warrant that they are each not aware of the status of, and/or any activity related to, the Wheeler PPP Whistleblower Claim since it was submitted by Wheeler, and do not intend to take any further steps related to the Wheeler PPP Whistleblower Claim other than as contemplated by section 3(d) of this Agreement, unless so requested by any governmental entity.

      7.      <u>No Claim on Books</u>. The Zermatt Parties agree that they have no right, title or interest in Wheeler's books, entitled: (1) *My Precious Darling*; and (2) *Activities Things and Dream*. The Zermatt Parties disclaim and release any interest in such books, and the Parties

agree that Special Provisions Section SPS-3(e) of Wheeler's Employment Agreement is hereby void.

8. <u>Return of Property</u>.

a. Wheeler warrants and represents that, to the best of his knowledge, he has returned to the Zermatt Parties or otherwise deleted and destroyed any and all documents, records, electronic files, and other property of the Zermatt Parties, including but not limited to laptop computers, iPads, mobile phones, electronic devices, peripherals, security access badges, ID cards, building and office access cards, entry badges, keys, access codes, passwords and log-in credentials, software, hardware, and databases, and all copies of the foregoing, including but not limited to all such items containing confidential information of the Zermatt Parties, received, acquired, or which have come into Wheeler's possession, custody or control, and/or are in the possession or control of his attorney, in connection with Wheeler's employment with WFASD (the "Employer Property"). Wheeler agrees that all Employer Property has been and remains the sole property of WFASD. Wheeler specifically represents and warrants that he does not have in his possession or control a copy of the ACT! client database, whether in electronic or hard copy form, or any parts thereof, nor has he provided the same to any third party. In the event Wheeler hereafter discovers any Employer Property in his possession or control, he will immediately notify his attorney, who then will return all such Employer Property, including all generations of copies, to counsel for the Zermatt Parties. Wheeler agrees to not access, use, or disclose any of the Employer Property, or any of the Zermatt Parties' proprietary or confidential information, consistent with his obligations under the law, as well as the APA and his Employment Contract.

b. Within 30 (Thirty) days of the Payment Date, the Zermatt Parties shall copy and return to Wheeler any personal files (including files for Wheeler's businesses not affiliated with WFASD) located on Wheeler's former office desktop computer and company server ("Z-drive"), and delete and destroy all copies held by the Zermatt Parties.

9. <u>Confidentiality and Non-disparagement</u>. Except as agreed to by the Parties or as otherwise set forth herein, or as may be necessary to enforce the terms of this Agreement, the Parties agree that the terms and conditions of this Agreement are confidential and shall not be disclosed, discussed, publicized, or revealed by them. In addition, the Parties further agree that they shall not engage in any publicity relating to this Agreement, including by issuing a press release, or arranging for a news story, or making comments via social media. Notwithstanding the foregoing, the Parties may disclose the terms and conditions and existence of this Agreement to their respective officers, directors, and employees who have a reasonable need to know, as well as their respective accountants, attorneys, and insurers, all of whom shall agree to keep such information confidential and not engage in any publicity relating to this Agreement per the terms of this section. In addition, the Parties may disclose the terms and conditions and existence of this Agreement if required by law or regulation (including federal securities laws), a lawful subpoena or discovery request, court order, governmental authority, or other legal process, or as may be needed to enforce the terms of this Agreement. If such subpoena, discovery request, or other applicable notice is received, the receiving party agrees to reasonably meet and confer with the other party prior to making any production or disclosure, in order to allow either party to object and/or move for a protective order, as applicable, to prevent the disclosure of the terms and conditions of this Agreement. Each Party further agrees that it will not directly or indirectly

make, publish, or communicate to any person or in any forum any comments or statements (oral or written) that denigrates or disparages the other Party.

10.   Claims Based on Future Behavior.   Although this Agreement provides a full release as to past behavior, as defined above, the Parties expressly do not intend to waive any claims based on any future behavior of the Parties.

11.   Entire Agreement.   Except as otherwise set forth herein, the undersigned each acknowledge and represent that no promise or representation not contained in this Agreement has been made to them and acknowledge and represent that this Agreement contains the entire understanding between the Parties and contains all terms and conditions pertaining to the compromise and settlement of the subjects referenced herein.   The undersigned further acknowledge that the terms of this Agreement are contractual and not a mere recital.   Any modification to this Agreement must be in writing and signed by the Parties.

12.   Governing Law and Dispute Resolution.   This Agreement shall be construed in accordance with, and be deemed governed by, the laws of the State of California.   In the event of any dispute between them, including related to a breach of this Agreement, or any provisions in the APA and Employment Contract, the Parties agree that they will submit such dispute to the exclusive jurisdiction of Judge Frederick Link (Ret.) for resolution, with venue in San Diego, California, without prejudice to the right to seek preliminary injunctive relief in court as may be necessary and appropriate.   If for any reason Judge Link is not able to serve as the arbitrator, the Parties agree to appoint an arbitrator using Judicate West, and hereby waive any right to a jury trial.   In any action arising out of or related to this Agreement, or to otherwise enforce any provision in this Agreement, the prevailing party shall be entitled to its reasonable attorney's fees and costs.

13.   No Prior Assignments.   Except as provided herein, the Parties hereby represent and warrant that they are the sole and exclusive owners of the rights, claims and causes of action herein released, which are free of any pledges, charges, equities, claims, covenants, liens or encumbrances in favor of any other person, firm or institution, and the Parties have not heretofore assigned or transferred, or purported to assign or transfer, to any other third person or entity any claim, right, liability, demand, obligation, expense, action or causes of action being waived or released pursuant to this Agreement.

14.   Full Authority.   Each Party hereby represents and warrants to the other Party that it has the full right, power and authority to enter into this Agreement, to grant the releases contained herein, and to perform its obligations hereunder.   The execution of this Agreement by the individual whose signature is provided at the end of this Agreement on behalf of such Party, and the delivery of this Agreement by such Party, have been duly authorized by all necessary action on the part of such Party.   This Agreement has been executed and delivered by such Party and (assuming due authorization, execution and delivery by the other Party hereto) constitutes the legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms.

15.   Benefit of Successors.   This Agreement and all covenants and releases set forth herein shall be binding upon and shall inure to the benefit of the respective Parties hereto, their

legal successors, heirs, assigns, partners, representatives, parent companies, subsidiary companies, agents, attorneys, officers, employees, directors and shareholders.

16. <u>Not Construed Against Drafting Party</u>. This Agreement and the provisions contained herein shall not be construed or interpreted for or against either Party hereto because that Party drafted or caused that Party's legal representative to draft any of its provisions.

17. <u>Representation by Counsel and Informed Consent</u>. The Parties expressly acknowledge and represent that they have been represented by counsel in the negotiations culminating in this Agreement and that each of them has read this Agreement, reviewed the same, and fully understand the meaning and effect of each and every provision of this Agreement, in particular the meaning and effect of California Civil Code section 1542. The Parties further agree and acknowledge they have been given reasonable and adequate time to review and consider this Agreement, and decide whether to enter into this Agreement.

18. <u>Severability</u>. If any provision of this Agreement or application thereof is held invalid, the invalidity shall not affect other provisions or applications of the Agreement that can be given effect without the invalid provision or application. To this end, the provisions of this Agreement are severable.

19. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original and such counterparts shall together constitute one and the same Agreement. Facsimile, PDF and electronic signatures on this Agreement shall be as legally binding as an original signature.

20. <u>Circular 230 Disclaimer</u>. Each Party to this Agreement (for purposes of this section, the "Acknowledging Party"; and each Party to this Agreement other than the Acknowledging Party, an "Other Party") acknowledges and agrees that (1) no provision of this Agreement, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department Circular 230 (31 C.F.R. part 10, as amended); (2) the Acknowledging Party (a) has relied exclusively upon his/her or its own, independent legal and tax advisers for advice (including tax advice) in connection with this Agreement, (b) has not entered into this Agreement based upon the recommendation of any other Party or any attorney or advisor to any other Party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other Party to avoid any tax penalty that may be imposed on the Acknowledging Party; and (3) no attorney or adviser to any other Party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the Acknowledging Party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Agreement.

I have read the foregoing Confidential Settlement Agreement and Mutual General Release and I accept and agree to the provisions contained therein and hereby execute it voluntarily and with full understanding of its consequences.

PLEASE READ CAREFULLY. THIS AGREEMENT
CONTAINS A MUTUAL GENERAL RELEASE OF ALL
KNOWN AND UNKNOWN CLAIMS.

Dated:  October 21, 2022

Peter W. Wheeler, individually and as
controlling shareholder of Wheeler Frost
Associates, Inc.

Dated:  October 21, 2022

Zermatt Holdings LLC

By:  Louis Dworsky

Its:  Managing Member

Dated:  October 21, 2022

WFA of San Diego, LLC

By:  Louis Dworsky

Its:  Managing Member